IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JAMES BUCCELLI, <br><br> Petitioner, <br><br> vs. <br><br> MARTIN FRINK; ATTORNEY GENERAL OF THE STATE OF MONTANA, <br><br> Respondents. | Cause No. CV 14-19-H-DLC-RKS <br><br><br> FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |

On April 2, 2014, Petitioner James Buccelli moved to proceed in forma pauperis with this action under 28 U.S.C. § 2254. (Doc. 2.) Mr. Buccelli is a state prisoner proceeding pro se.

On May 2, 2014, Respondents ("the State") filed the trial transcript. (Doc. 8.) On May 16, 2014, Mr. Buccelli filed a notice in response. (Doc. 9.)

**I. Background**

A jury convicted Mr. Buccelli of burglary,[1] Pet. (Doc. 1) at 2-3 ¶¶ 1-5, a violation of Mont. Code Ann. § 45-6-204. He was designated a persistent felony offender and sentenced to serve 40 years in prison. *Id*. at 3 ¶ 4; *Anders* Br. at 12-

---

[1] Mr. Buccelli was also convicted of a misdemeanor drug crime, *see* 1 Trial Tr. (Doc. 8-1) at 7:15-20, 3 Trial Tr. (Doc. 8-3) at 604:6-7. He does not contest that conviction here. *See* Pet. at 3 ¶ 3. At any rate, his concurrent six-month sentence for that crime expired before he filed his federal petition. *See Anders* Br. at 12-13, *State v. Buccelli*, No. DA 12-0357 (Mont. filed Dec. 10, 2012), *available at* http://supremecourtdocket.mt.gov (accessed Sept. 15, 2014); *Maleng v. Cook*, 490 U.S. 488, 491 (1989) (per curiam).

1

13, *State v. Buccelli*, No. DA 12-0357 (Mont. filed Dec. 10, 2012), *available at* http://supremecourtdocket.mt.gov (accessed Sept. 15, 2014).[2]

Mr. Buccelli pursued a direct appeal. Appellate counsel filed an *Anders* brief.[3] The Montana Supreme Court dismissed the appeal as frivolous on February 6, 2013. Order at 1, *Buccelli*, No. DA 12-0357 (Mont. Feb. 6, 2013). Mr. Buccelli, acting pro se, filed a petition for leave to file an out-of-time appeal. The Montana Supreme Court denied the petition on September 11, 2013, and denied Mr. Buccelli's motion for an extension of time to file a petition for rehearing on September 23, 2013. *See State v. Buccelli*, No. DA 13-0571 (Mont. filed Aug. 29, 2013).

Mr. Buccelli timely filed his federal petition on March 30, 2014. *See* 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 653-54 (2012).

## II. Mr. Buccelli's Claims and Analysis

In his federal petition, Mr. Buccelli asserts the evidence was not sufficient to support his conviction of burglary. Pet. at 4 ¶ 13A. He also contends trial and appellate counsel were ineffective because they failed to file motions for discovery. *Id.* at 5 ¶ 13B. Mr. Buccelli is entitled to federal habeas relief only if he

---

[2] A court may take judicial notice of a state court's records that are directly related to a federal habeas petition, *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011), and "not subject to reasonable dispute." Fed. R. Evid. 201(b).

[3] *See Anders v. California*, 386 U.S. 738, 744 (1967); Mont. Code Ann. § 46-8-103(2).

shows that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### A. Sufficiency of the Evidence

#### 1. Evidence Considered

A state habeas petitioner is entitled to federal habeas relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also In re Winship*, 397 U.S. 358, 364 (1970).

Mr. Buccelli asserts that the transcript of conversations between the 911 dispatcher and police officers at the scene would demonstrate that he was in the custody of a police officer when the intruder was still in the house. Notice (Doc. 9) at 2-3. A portion of that transcript was attached to Mr. Buccelli's petition. Pet. Ex. 1 (Doc. 1-1 at 1-2). It was admitted into evidence at trial, 2 Trial Tr. at 397:1-400:3, and has been considered, along with the rest of the trial transcript, under *Jackson*. The Court assumes Mr. Buccelli's notations as to what was omitted are correct.

#### 2. Merits

Early in the morning hours of July 3, 2011, Mr. and Mrs. Brown, of Helena, called 911 to report an intruder inside their home. Several police officers were nearby, at the scene of a domestic disturbance. An officer responding to the

3

Browns' 911 call apprehended Mr. Buccelli less than three minutes after Mr. Brown's 911 call was received. 1 Trial Tr. (Doc. 8-1) at 129:10-24; 2 Trial Tr. (Doc. 8-2) at 394:18-395:17. The jury heard testimony that Mr. Brown reported the intruder was still in the house at the time the officer apprehended Mr. Buccelli some distance away from the house. 1 Trial Tr. at 131:7-18, 134:20; *see also* Pet. Ex. 1 (Doc. 1-1 at 1-2). Mr. Brown's 911 call was recorded and played for the jury at trial. 1 Trial Tr. at 126:14-127:3, 129:25-130:7.

The jury also heard testimony about Mr. and Mrs. Brown's encounter inside the house with the intruder. Each saw his face. 2 Trial Tr. (Doc. 8-2) at 250:20-251:15, 348:18-25, 350:20-21. They said that after they fled the house, the intruder shut the front door behind them, and they could no longer see him. *E.g. id.* at 253:6-21, 349:20-25. They testified that they looked in the windows to attempt to ensure the intruder did not go upstairs, where their children were sleeping, but they did not see anyone. They also testified they went around the side of the house, soon reaching the backyard, where the motion-activated light was already on. *E.g. id.* at 254:2-22, 350:23-351:24.

Mr. Brown testified that he was on his cordless phone with the 911 dispatcher throughout this time. 2 Trial Tr. at 252:18-253:21, 254:4-9. Later, after the Browns had identified Mr. Buccelli as the intruder, they returned to their home and discovered the back door key had been removed from the deadbolt lock inside

4

the house and was missing. The key was found the next day in a neighbor's yard. *Id.* at 266:5-267:5, 356:4-18.

According to the Browns, the intruder smelled strongly of cigarettes, alcohol, and body odors. 2 Trial Tr. at 250:25-251:6, 353:19-354:5. According to the officers who detained Mr. Buccelli, so did he. 1 Trial Tr. at 137:16-20, 183:23-184:7; 2 Trial Tr. at 461:15-18.

Although police took fingerprints and shoeprints from the scene, no forensic evidence placed Mr. Buccelli inside the Browns' home. There was some evidence that Mr. Buccelli had a bad knee and may not have been physically able to use the side window to gain entry to the home. The intruder told the Browns he had a gun, 2 Trial Tr. at 253:1-17, 348:18-25, 349:15-18, but Mr. Buccelli had no gun. When the Browns circled around the side of the house to the backyard, the front door of the Browns' home was apparently unguarded.

Nonetheless, a reasonable juror could have inferred that the intruder left the house through the back door and backyard before Mr. and Mrs. Brown reached a point where they could see the backyard, that he threw away the key he had used to get out of the house, and that he was escaping the scene of the crime when he was apprehended by Officer Ryan. A reasonable juror could have believed the Browns accurately recognized Mr. Buccelli as the person they saw inside their home. 2 Trial Tr. at 255:14-256:13, 270:8-21, 343:16-24, 354:6-16. A reasonable juror

could have believed Mr. Buccelli intended to commit theft while he was in the home. *Id.* at 250:20-24, 265:11-15, 354:17-23. And a reasonable juror could have believed Mr. Buccelli's knee did not prevent him from gaining access through the window of the Browns' home. *E.g. id.* at 459:10-462:17, 476:3-479:14 (describing Mr. Buccelli's attempts to kick out a window in the back of a patrol car after his arrest).

Any reasonable juror could have found Mr. Buccelli guilty beyond a reasonable doubt. The evidence was sufficient to support the conviction under the *Jackson* test. This claim should be denied.

### B. Failure to File Motions for Discovery

Mr. Buccelli contends that trial and appellate counsel were ineffective because they failed to file motions for discovery. As evidence to support this claim, he attached to his petition two letters, one from the Clerk of the District Court, *see* Pet. Ex. 2 (Doc. 1-1 at 3), and one from appellate counsel, Pet. Ex. 2 (Doc. 1-1 at 4).

The Montana Rules of Appellate Procedure contain no provision for discovery motions; the Rules only contain provisions relating to the record created in the trial court. This is because appeals are predicated on the record created during proceedings in the trial court. *See e.g.* Mont. R. App. P. 8, 9; *State v. Norman*, 244 P.3d 737, 743 ¶ 20 (Mont. 2013) (distinguishing claims "based on

6

facts of record" that are properly raised on appeal from claims "based on matters outside the record" that must be developed and raised in a separate proceeding). Moreover, discovery produced by the State is made "available to the defendant," *see* Mont. Code Ann. § 46-15-322, not filed with the Clerk of Court. The letters attached to the petition, therefore, have no probative value.

To the extent Mr. Buccelli's claim might be construed to allege that trial counsel should have investigated the case more thoroughly, the claim fails. Claims of ineffective assistance of trial counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Mr. Buccelli must allege facts sufficient to support an inference both that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. Mr. Buccelli alleges no facts that could, if true, support an inference that investigation could have supported acquittal. The jury was well aware that Mr. Buccelli was in custody while Mr. Brown was telling the 911 dispatcher the intruder was still in the house. Other evidence, and reasonable inferences drawn from it, showed that Mr. Brown was mistaken when he made that statement. This claim should be denied.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

7

enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Here, a reasonable jurist reviewing the trial transcript could find no reason whatever to encourage further proceedings. Mr. Buccelli's claim that the evidence was insufficient is frivolous. His claim that his case was not adequately investigated is not supported even by an unproven allegation that additional probative evidence existed and could have been discovered. Mr. Buccelli makes no showing at all, much less one of substance, under either *Jackson v. Virginia* or *Strickland v. Washington*. A COA should be denied.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

1. The Petition (Doc. 1) should be DENIED for lack of merit.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Buccelli may object to this Findings and Recommendation within 14 days.[4] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Buccelli must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 29th day of September, 2014.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge

---

[4] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.